All objections contained in the depositions of Drs. Naumann, Pitts and Sotolongo are ruled upon in accordance with the law and the Opinion and Award rendered in this case.
The Full Commission has reviewed the prior Opinion and Award based on the record of the proceedings before Deputy Commissioner Douglas E. Berger and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or to amend the Opinion and Award.
* * * * * * * * * * * * *
The Full Commission finds as facts and concludes as matters of law the following which were entered into by the parties at the hearing as:
STIPULATIONS
1. All stipulations contained in the Pre-Trial Agreement are incorporated herein by reference.
2. The parties agreed to stipulate to the following documents to be received into evidence:
 (a) A letter dated 18 February 1994 to Jessie Hairston from Key Risk Management Services, Inc. marked as Stipulated Exhibit Number 1. (One page)
 (b) A letter dated 17 May 1993 to Mary Ellen Feeney from Attorney Michael J. O'Foghludha marked as Stipulated Exhibit Number 2. (One page)
 (c) A letter dated 10 June 1994 to Mr. O'Foghludha from Mary Ellen Feeney marked as Stipulated Exhibit Number 3. (One page)
 (d) Recorded statement by the plaintiff dated 17 February 1994 marked as Stipulated Exhibit Number 4. (Eleven pages)
Prior to the hearing, the parties entered into a Pre-Trial Agreement which is incorporated herein by reference.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. On 15 November 1993, plaintiff was hired as a cake decorator by defendant-employer in the three (3) deli-departments of three (3) Byrd's grocery stores in Durham, North Carolina. Her job duties included decorating pre-baked cakes, keeping the cake cases at all three (3) stores full, decorating special order cakes, and teaching other employees at each of the three (3) stores how to decorate cakes.
2. Plaintiff decorated cakes for four (4) to six (6) hours a day over a period of five (5) days a week. Plaintiff would hold a pastry bag filled with icing in her right hand and guide the metal tip of the bag with her left hand. In order to force the icing inside the pastry bag to flow on to the cake, plaintiff would twist the bag with her right hand and then squeeze the icing out. Plaintiff would do on the average eight (8) to ten (10) cakes a day. Plaintiff took approximately one half (1/2) hour to complete each cake.
3. In early December 1993, plaintiff began experiencing pain on the right side of her neck and pain, numbness, tingling and weakness in her right wrist, hand, fingers and arm.
4. In early December 1993, plaintiff took a box of brownies from a shelf in the Byrd's walk-in freezer and reached up to place the product on a higher shelf. As plaintiff reached up on her tiptoes, she felt a little pop in the middle of her back above her tailbone. A few days later, plaintiff began to feel tingling in her left leg and a dull pain in her back.
5. Prior to February 7, 1994, plaintiff told her supervisor Patricia Pulliam that she had injured her back while lifting a box in the freezer. Plaintiff told her supervisor Pat Pulliam that her hand hurt when she decorated cakes. Ms. Pulliam informed plaintiff that she had a similar type problem and had to have carpal tunnel surgery. Ms. Pulliam also informed plaintiff that she had received workers' compensation benefits for a work-related injury. Plaintiff asked Ms. Pulliam if she had any problems covering her claim. Ms. Pulliam expressly made it clear to plaintiff that she did not want to get involved in any injury claim that plaintiff might seek. Ms. Pulliam did not make any effort to inform any of her supervisors about the work injuries suffered by plaintiff despite the fact that Ms. Pulliam was aware that her supervisors were not satisfied with plaintiff's production of cakes.
6. Plaintiff sought medical treatment for her neck, lower back pain and right hand without authorization on 2 December 1993 from Dr. Naumann, a chiropractor. Plaintiff was treated with chiropractic manipulation and soft tissue work to her forearm, lower cervical region and lumbosacral region.
7. On 7 February 1994, plaintiff was called to a meeting that included plaintiff, store manager Brian Cahill and deli manager Bobby Wilkins. The two managers did not prompt any discussion concerning the issue of resignation. Plaintiff offered to resign from her position. Plaintiff put this resignation in writing and set forth 21 February 1994 as the effective date. Neither of the two managers made any inquiry as to why plaintiff had offered to resign.
8. Plaintiff offered to resign from her position because of an inability to maintain production of decorated cakes due to the pain that she was suffering in her right wrist.
9. During the two (2) week period after her resignation, plaintiff received authorization from the store manager Brian Cahill to see Dr. Sotolongo. Dr. Sotolongo, a family physician, was contracted to see workers' compensation cases for defendant-employer for initial evaluation, diagnosis and treatment. On 14 February 1994, plaintiff was examined by Dr. Sotolongo.
10. Dr. Sotolongo diagnosed plaintiff as having carpal tunnel syndrome and tendonitis in her right hand. He instructed plaintiff to wear a hand splint and placed work restrictions that prohibited plaintiff from using her right hand except to do desk work for two (2) weeks. Dr. Sotolongo was the first competent medical authority to notify plaintiff that she was suffering from carpal tunnel syndrome and that it was work-related.
11. On 16 February 1994, plaintiff submitted to defendant-employer a letter seeking to rescind her decision to resign from defendant-employer. Plaintiff informed deli manager Bobby Wilkins that Dr. Carlos Sotolongo had diagnosed plaintiff as suffering from carpal tunnel syndrome. Defendant-employer declined to rehire plaintiff.
12. On 15 March 1994, plaintiff sought medical treatment from Dr. Pitts, an orthopedist at the Durham Orthopedic Clinic. Dr. Pitts diagnosed plaintiff as having carpal tunnel syndrome in the right wrist. On 26 May 1994, plaintiff sought medical treatment from Dr. Pitts for her back injury. Dr. Pitts diagnosed plaintiff as suffering from degenerative disc syndrome at L-5-S-1, spondylolisthesis, and possibly osteopenia of the lumbar spine. Dr. Pitts recommended and plaintiff eventually received an epidural steroid injection.
13. Plaintiff made significant efforts to obtain employment after her job ended with defendant-employer. Plaintiff responded to want-ads in newspapers. Plaintiff sought employment at the Furniture Company in Durham but could not do lifting required in the job. Plaintiff applied at the 9th Street Bakery but could not lift thirty-five (35) pounds of muffin mix. Plaintiff sent out resumes. Plaintiff sought help from the Employment Security Commission. Plaintiff entered into a vocational rehabilitation program.
14. On 5 September 1994, plaintiff obtained employment at a restaurant as a prep cook. Plaintiff works twenty (20) to thirty (30) hours a week and is going to school full-time in order to obtain a speech communications degree. Plaintiff is not working full-time because she desires to better herself and not because of any disability she has suffered.
15. The repetitive movement of plaintiff's right hand and wrist required by her duties of employment as a cake decorator with defendant-employer was a significant contributing or causative factor in the development of her carpal tunnel syndrome. Plaintiff's employment as a cake decorator with defendant-employer exposed her to a greater risk of contracting carpal tunnel syndrome than the public generally.
16. Plaintiff has not reached maximum medical improvement with regard to her right wrist and lower back. No finding is made at this time regarding extent of any partial disability or permanent disability benefits which may be due plaintiff.
17. On or about early December 1993, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer in that she sustained an injury to her back as the result of a specific traumatic incident of the work assigned when plaintiff felt a pop in her lower back when placing a box of brownies on a shelf.
18. The specific traumatic incident plaintiff sustained on 1 October 1993 was the proximate cause of the back condition for which plaintiff sought medical treatment after early December 1993.
* * * * * * * * * * *
Based upon the foregoing findings of fact the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff contracted carpal tunnel syndrome in her right hand, an occupational disease which is due to causes and conditions characteristic of and peculiar to the particular employment as a cake decorator ad which is not an ordinary disease of life to which the general public is equally exposed to outside of this employment. G.S. § 97-53 (13); Booker v. Duke Medical Center,297 N.C. 458 (1979).
2. As a result of this occupational disease, plaintiff was temporarily and totally disabled for a period commencing 21 February 1994 to 5 September 1994 and is entitled to receive weekly temporary total disability compensation benefits at the rate of $136.73 during said period. G.S. § 97-29.
3. Plaintiff is entitled to have defendants provide all medical treatment arising from said occupational disease to the extent such treatment tends to effect a cure, give relief or lessen plaintiff's disability. G.S. § 97-25.
4. In early December 1993, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer in that she sustained a back injury as the result of a specific traumatic incident of the work assigned. G.S. § 97-2 (6). Plaintiff is entitled to have defendants provide all medical treatment arising from this injury by accident to the extent it tends to effect a cure, give relief or lessen plaintiff's disability. G.S. § 97-25.
* * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of Deputy Commissioner Berger and enters the following:
AWARD
1. Defendants shall pay compensation to plaintiff at the weekly rate of $136.73 from 21 February 1994 up to but not including 5 September 1994 for her temporary total disability. This compensation has accrued and shall be paid in a lump sum subject to the attorney's fee hereinafter approved.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of this injury by accident when the bills have been submitted to defendant and approved pursuant to procedures established by the Commission.
3. At attorney's fee in the amount of twenty-five percent (25%) of the compensation awarded herein is hereby approved for plaintiff's counsel which fee shall be deducted from the aforesaid award and paid directly to counsel for plaintiff.
4. Defendants shall pay an expert witness fee in the amount of $285.00 to Dr. Naumann, $280.00 to Dr. Sotolongo, and $430.00 to Dr. Pitts.
5. Defendants shall pay the costs.
 S/ __________________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ __________________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ __________________________ DIANNE C. SELLERS COMMISSIONER